THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARTIN URESTE, Defendant-Appellant.

(No. 71-181; ▮▮▮▮▮▮▮▮

Third District—September 27, 1972.

*Rehearing denied October 25, 1972.*

Jack Brunnenmeyer, of Peoria, for appellant.

Roland Litterst, Assistant State's Attorney, of Peoria, for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The Grand Jury of Peoria County returned three indictments against Martin Ureste which indictments were consolidated for trial. In the first indictment relating to the death of Virgil Powell defendant was charged in two counts with the offenses of murder and in the third count with voluntary manslaughter (unreasonable use of self defense). The second indictment in two counts charged attempted murder and aggravated battery of Ivy Whitt and the third indictment charged the same two offenses against Shirley Norton. The jury found defendant guilty of voluntary manslaughter with respect to the death of Virgil Powell and also found defendant guilty of the attempted murder of Ivy Whitt and Shirley Norton. No verdicts were returned on the other counts. The Circuit Court of Peoria County sentenced defendant to terms of from 10 to 20 years in the penitentiary on each of the offenses, the sentences to run concurrently.

On June 7, 1969, defendant was in the Birdland nightclub in Peoria and had been in the club for about three hours before the events giving rise to the criminal charges took place. He started pestering a woman at the bar. He kept bumping into her trying to get her attention until it was so obvious that the bartender interceded. When the bartender asked the woman what the problem was she complained that "this guy" (referring to defendant) was molesting her. The bartender told Ureste to quit it. Later defendant again began to bother the woman at the bar. The bartender told defendant to quit it or get out. The defendant left the club. About twenty minutes later Ureste returned, went up to the bar where the woman was that he had molested earlier and shot her in the cheek. He moved down the bar and shot Ivy Whitt who was standing at the bar and shot Shirley Norton as she was trying to get into the ladies' room. The bartender and other employees started to shoot at Ureste so he ran to the rear of the club and hid behind a post. The bartender testified that

he was so mad at the defendant that he wanted to kill him. In the exchange of shots defendant was wounded and ran to the front of the club onto the bandstand where he hid behind a drum. Defendant reloaded his gun, the exchange of shots continued and shortly before the police arrived the defendant shot Virgil Powell in the back as Powell was lying on top of a patron trying to shield her from the gun fire. When the police arrived Ureste surrendered without resistance and was taken to the hospital.

Indictments against Ureste were returned in July, 1969. After a psychiatric examination defendant was found to be incompetent to stand trial and offer effective assistance to his attorney. He was committed to the Illinois Security Hospital and confined there until September, 1970. At this time he was found to be competent to stand trial and his trial commenced in the latter part of December, and was concluded in the early part of January with the jury finding him guilty of the three offenses described above.

On this appeal defendant argues the jury was improperly impanelled, the evidence was insufficient to support the jury's verdict that he was guilty of involuntary manslaughter, the evidence was insufficient to justify the jury's conclusion that he was sane and that erroneous instructions were given the jury.

With respect to defendant's claim the jury was improperly panelled it appears that the jury panel from which the jury was selected to hear this case had already served for two weeks the usual period for which jurors are summoned as provided by statute. This trial commenced on the first day of the third week and it is this fact which defendant now claims invalidates his trial.

■■ It would be sufficient to say that defendant offered no challenge to the array and accepted the jurors without objection. However the statute itself, Sec. 8, Ch. 78, Ill. Rev. Stat. 1969, provides that the jurors serve for two weeks "unless the court shall otherwise order." Nor does defendant in support of his argument indicate how the jury's service beyond the two week period resulted in any prejudice either actual or apparent.

Arguing that defendant was either guilty of the murder of Virgil Powell or was guilty of no offense respecting Virgil Powell defendant claims that the evidence is insufficient to justify his conviction for voluntary manslaughter. As previously indicated defendant was found guilty of voluntary manslaughter in violation of Sec. 9—2(b), Ch. 38, Ill. Rev. Stat. 1969, which offense involves the unreasonable use of self defense. According to defendant since he was found guilty of attempted murder of Ivy Whitt and Shirley Norton any offense which he could have committed against Virgil Powell should likewise have been murder.

In our opinion defendant's argument is not supported by the evidence and the facts disclosed above if believed by the jury demonstrate that different mental states may have accompanied defendant's conduct with respect to the different victims.

■■ As applied to the facts of this case the gist of the manslaughter is whether there is any evidence from which it may be inferred that Martin Ureste believed he could resort to deadly force for self defense at the time he shot Virgil Powell. From the evidence the questions arise as to whether or not defendant had abandoned the affray, whether or not he had retreated after he was shot, whether or not he believed he was going to be killed after he hid behind the drum and finally whether the defendant believed that he had the right to defend himself. (*People v. Canada*, 26 Ill.2d 491, 187 N.E.2d 243, and *People v. Jones*, 131 Ill.App.2d 647, 264 N.E.2d 299.) Even if defendant may have been originally an aggressor if he abandoned the combat, disengaged from the affray and sought retreat the consequences of his later conduct may be different than the consequences of his original aggression.

■■ Believing as we do that there is evidence from which it may be concluded that defendant although unreasonably, thought he had the right to act in self defense it follows that the jury was properly instructed on the offense of voluntary manslaughter (*People v. Harris*, 8 Ill.2d 431, 134 N.E.2d 315), and there is no reason for disturbing the jury's verdict.

In asserting the evidence is insufficient to prove defendant was sane at the time of the occurrence defendant has directed our attention primarily to the contrasting medical opinions and the "irrationality" of defendant's shooting spree. As we have previously indicated defendant was committed to the Illinois Security Hospital as incompetent to stand trial. This determination was based primarily on the testimony of Doctor Ward a psychiatrist at the Zeller Zone Clinic in Peoria who examined defendant at the request of the State pursuant to an order of court. Dr. Ward first examined defendant shortly after the occurrence.

During the trial Dr. Ward was called as a witness in behalf of the defendant. He testified concerning various symptoms and conditions either related to him by the defendant or which he observed and concluded that at the time of the occurrence defendant was mentally ill and unable to appreciate the quality of his conduct. Dr. Ward did not have any prior acquaintance and did not believe that defendant was intoxicated at the time of the occurrence. Defendant had no prior history of mental illness.

■■ Dr. Ledien, who examined defendant at the request of defendant's attorney, testified as a rebuttal witness on behalf of the State. From his examination which consisted of two interviews with the defen-

dant Ledien concluded that defendant was suffering from a severe memory disturbance regarding the occurrence of June 7 and the surrounding circumstances and as a consequence Ledien indicated that he could not tell whether defendant was suffering from a "mental defect or mental disease" (Sec. 6—2, Ch. 38, Ill. Rev. Stat. 1969), at the time of the occurrence. The failure of Dr. Ledien to have and to express an opinion that defendant was sane at the time of the occurrence is pointed to by the defendant as demonstrating the State's failure to prove defendant's sanity beyond a reasonable doubt. Notwithstanding defendant's reliance on the failure of Dr. Ledien to have formed and expressed an opinion on defendant's sanity *People v. Burress*, 1 Ill.App.3d 17, 272 N.E.2d 390, holds that medical evidence of sanity is not indispensable even where sanity is an issue. However Dr. Ledien's testimony does bear importantly on the issue of sanity and when considered with the other evidence relevant thereto it is our conclusion that there is evidence supporting the jury's verdict. The aspect of Dr. Ledien's testimony referred to is that related to the absence of objective facts, history and symptoms sufficient to form the basis of an opinion. According to Dr. Ledien the hallucinations, voices and other symptoms of disorientation were subjective, not verifiable by defendant's previous conduct or history and inconclusive in so far as forming an adequate basis for an opinion on defendant's sanity at the time of the occurrence. Dr. Ledien's testimony contradicted that of Dr. Ward not in the sense that he offered a contrary opinion on defendant's sanity but rather that he contradicted the adequacy or sufficiency of the basis of Dr. Ward's opinion. Thus in effect Dr. Ward's opinion was disputed and questions were presented requiring resolution by the jury. *People v. LeMay*, 35 Ill.2d 208, 220 N.E.2d 184, *People v. Yonder*, 44 Ill.2d 376, 256 N.E.2d 321.

Also testifying in behalf of the State on the issue of insanity was defendant's employer who had known and employed defendant during the summer months for the past seven years. According to this witness defendant had worked regularly at the nursery business during the summer months, had never complained of any odd feelings or experiences and so far as the employer was concerned defendant had acted quite normally.

The arresting police officer testified that at the time of his arrest defendant was coherent, did not appear strange and was able to tell what had happened on the way to the hospital even though defendant had been shot. The doctor who treated defendant at the hospital likewise testified that at the time of his admission to the hospital defendant did not exhibit any unusual symptoms.

Although defendant's conduct in the Birdland club is described as

"irrational" it may be so regarded only in the sense that most crimes of violence are senseless. However in this case defendant's efforts to attract the attention of the woman at the bar and her decisive rejection or rebuff of his intentions offers at least some explanation of his later conduct with a gun. Even though such reaction may be regarded as reprehensible, an inappropriate reaction and senseless, the motivation when considered with all the other testimony supports the jury's verdict that defendant was sane.

■■ The last objection of defendant regarding errors in the instructions is without merit. Defendant's objection is that the instructions which were delivered to the jury contained the legend as to which party, the State or the defendant, tendered the instruction. The only basis for this objection is the fact that the record includes a copy of the set of instructions which does include the legend. This is in accord with Sec. 67(2), ch. 110, Ill. Rev. Stat. 1969, and does not support defendant's claim that the set of instructions given the jury included such legend.

For the foregoing reasons the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

SCOTT and DIXON, JJ., concur.