THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN R. JACKSON, Defendant-Appellant.

First District (4th Division)   No. 62488

Opinion filed October 6, 1976.

James J. Doherty, Public Defender, of Chicago (James E. Burke and Thomas F. Finegan, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The defendant, John R. Jackson, was convicted of burglary after a bench trial in the Circuit Court of Cook County, and was sentenced to two years' probation.

The issues on appeal are whether there was sufficient evidence presented to raise a reasonable doubt of the defendant's sanity which would require the State to prove his sanity beyond a reasonable doubt, and whether there was proof beyond a reasonable doubt that the defendant intended to commit a burglary.

The defendant was arrested at 8 p.m. on February 7, 1974, in the women's washroom of the Tesla Elementary School of the Chicago Board of Education. Officer Pavilionis of the Chicago Police Department testified when he arrived at the school he observed an open window and made a search of the building. As he walked into the washroom the defendant, who was standing on the toilet, yelled, "Don't shoot. Don't shoot." After advising him of his rights and receiving his assurance that he understood them, the defendant was asked what he was doing in the school. He replied, "Nothing," and when asked how he got in, he replied that two boys by the names of Johnson and Gross let him in. The building was searched thoroughly but no one else was found. Officer Pavilionis testified the police were never able to verify if people by the names of Johnson and Gross existed.

The defendant sought to raise the defense of insanity by presenting the testimony of Dr. Kelleher, Director of the Psychiatric Institute of Cook County. Dr. Kelleher examined the defendant on July 23, 1974, about six months after the arrest and again prior to trial when he determined the defendant was mentally fit to stand trial. He also received the reports of Dr. Nicholas, who conducted a standard psychiatric examination of the defendant, Dr. Gibbs, who administered an electroencephalogram to the defendant, and a doctor who attended the defendant after he was struck by a train in 1970. In addition, he received a statement of the defendant's stepfather, who related he had an altercation with the defendant prior to the arrest. Dr. Kelleher testified Jackson had an adult normal intelligence and was free from hallucinations, but there was evidence he had suffered brain damage as a result of the earlier accident, and he could be expected to have headaches, dizzy spells and blackout spells.

The defendant told him he was sitting on the steps of the school with a headache, and the next thing he knew he was sitting in the school and the police were coming. He panicked and hid in the washroom. He told the police two other people were involved but that was not the truth.

Dr. Kelleher testified if the defendant had a blackout, he would not have been operating as a conscious person; he would have been operating on an automated basis and would not have been able to consciously judge or evaluate what he was doing. He concluded it was entirely possible the defendant was suffering from a blackout at the time he entered the school, but he could not state with any degree of medical certainty whether it did happen. Similarly, he could not be certain with any degree of medical certainty the defendant was telling him the truth about the blackout. The

only way he could be certain whether the defendant was experiencing a blackout was to have observed him at that time or by receiving information from some professional person equipped to judge a blackout who did observe him.

Dr. Kelleher also stated it would be common for a person having a blackout to make up a story to explain away the blackout period, and if the substance of the story told to the police about having been let in by two boys were true, then the defendant did not have a blackout at the time of entry into the school. He believed a person who said "Don't shoot, I'm coming out," would no longer have been in a blackout.

The defendant contends a reasonable doubt was raised regarding defendant's sanity at the time of the crime (Ill. Rev. Stat. 1973, ch. 38, par. 6—2), and the State failed to prove beyond a reasonable doubt the defendant was sane at the time the offense was committed. The defendant relies on the testimony of Dr. Kelleher that blackout victims tend to make up stories to explain their amnesia, and he relies on the testimony of Officer Pavilionis, who indicated he found an open window but was not able to verify whether persons named Johnson or Gross existed. Therefore, the defendant asserts his erroneous statement to the police shows he was blacked out at the time he entered the building.

Section 6—2 of the Illinois Criminal Code provides:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

Section 3—2 of the Code provides:

"(a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.

(b) If the issue involved in an affirmative defense is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense."

■■ The law presumes all men to be sane (*People v. Smothers* (1973), 55 Ill. 2d 172; *People v. Robinson* (1961), 22 Ill. 2d 162), but once evidence of insanity is introduced by either the State or the defendant, the presumption ceases and it becomes the State's burden to prove beyond a reasonable doubt that at the time of committing the crime the defendant was legally sane. (*People v. Redmond* (1974), 59 Ill. 2d 328; *People v. Le May* (1966), 35 Ill. 2d 208.) In this case in order for the presumption of

insanity to be established it was necessary for the trier of fact to believe the defendant was telling the truth when he told Dr. Kelleher he blacked out before entering the school. *People v. Turner* (1971), 2 Ill. App. 3d 11; *People v. Conrad* (1967), 81 Ill. App. 2d 34.

Dr. Kelleher stated that based on the defendant's brain damage, his medical history and the stress situation resulting from an altercation with his stepfather, it was possible for the defendant to have been in a blacked out state when he entered the building. However, he could not vouch for the veracity of either the defendant or his stepfather, and the defendant's behavior upon being arrested indicated he was not in an automated state at that time.

■■ Under circumstances where a determination of the defendant's sanity depends entirely on his own self-serving statements, and where he failed to tell police about his blackout, the finding of the trial judge that he did not believe what the defendant told Dr. Kelleher is not against the manifest weight of the evidence.

■■ Even if testimony of Dr. Kelleher is deemed to have created a reasonable doubt as to the defendant's sanity, it is clear that whether the prosecution sustained its burden of proof is a question for the trier of fact, and that determination will not be disturbed on review unless it is against the manifest weight of the evidence. (*People v. Sims* (1976), 35 Ill. App. 3d 401; *People v. Dread* (1975), 27 Ill. App. 3d 106.) It is for the trier of fact to determine from all the evidence whether the State has fulfilled its burden, and it is not necessary for the State to produce additional evidence or to offer expert testimony; it could solely rely upon the facts already in evidence and the inferences to be drawn from those facts. *People v. Lono* (1973), 11 Ill. App. 3d 443; *People v. Horton* (1975), 29 Ill. App. 3d 704; *People v. Ureste* (1972), 7 Ill. App. 3d 545.

■■ The defendant also contends he was not proved guilty of burglary beyond a reasonable doubt because the State did not prove his intent to commit a felony or a theft in the school. The law in Illinois is well settled that in the absence of inconsistent circumstances, proof of unlawful breaking and entering into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. (*People v. Johnson* (1963), 28 Ill. 2d 441; *People v. Loden* (1975), 27 Ill. App. 3d 761.) In the instant case there were no such inconsistent circumstances.

For these reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

JOHNSON, P. J., and BURMAN, J., concur.