THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEQUOIA BOOKS, INC., Defendant-Appellant.

Second District No. 2—86—0916

Opinion filed September 18, 1987.

Reno, O'Byrne & Kepley, P.C., of Champaign (Michael J. Zopf, of counsel), for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Sequoia Books, Inc., was charged by criminal complaint with four counts of obscenity, each involving the sale of an allegedly obscene magazine. (Ill. Rev. Stat. 1985, ch. 38, par. 11—20a(1).) Following a jury trial, defendant was found guilty on all counts and was subsequently ordered to pay fines and costs totaling $1,123.

On January 2, 1986, Harold Andrews, a special agent with the Illinois State Police, entered the Denmark Book Store in Aurora. Andrews browsed in the book store for approximately an hour and then purchased four magazines, Leather Sleaze, Hot Tricks, Instant Porn, and Big Bust Bondage. On January 3, 1986, a four-count criminal complaint was filed, charging defendant, Sequoia Books, Inc., d/b/a Denmark II, with obscenity. Later, at trial, defendant would stipulate that on January 2 defendant did offer the aforementioned magazines for sale and that defendant knew the nature or content of the magazines.

On July 21, 1986, the cause proceeded to trial. During jury selection, the prosecutor asked each prospective juror whether the juror was aware that a law existed in Illinois prohibiting the sale of obscene material and whether the passage of such a law caused the juror personal concern. After the prosecutor had made this inquiry of eight prospective jurors, defendant objected. The objection was overruled.

Also during jury selection, defense counsel asked a juror whether he had any problems with the fact that the legislature had not passed a law indicating that it is illegal to enter an adult bookstore. The State's objection to this inquiry was sustained. Later, out of the presence of the jury, defense counsel asked that, in the interest of fairness, he be allowed to ask his question, since his question was "very much in the same plane as far as probative value" as the State's earlier line of inquiry which the court had permitted. The court denied defense counsel's request.

During trial the State's witness, Mary Jo McMahon, an assistant principal at Oswego High School with a master's degree in art education, opined that none of the four magazines purchased by Andrews had any serious artistic value. Also testifying for the State was Jeanette Page, an English teacher in the Oswego school system with a master of arts degree in English. It was Mrs. Page's opinion that none of the magazines had any serious literary value.

Next, Michael Chiappetta, a psychologist who had substantial experience with individuals having sexual problems, testified that in his opinion the magazines had absolutely no serious scientific value. Chiapetta's opinion was based on the fact that none of the activities in the four magazines depicted a wholesome sexual relationship. In Chiapetta's opinion, the average adult reading the magazines would find the material depicted within them disgusting, and he would see it "as a sick or morbid or disturbing or similar thing."

At the conclusion of Chiapetta's testimony, the State rested. Defendant moved for a directed verdict, and the motion was denied. Defendant then offered into evidence certified copies of adult use ordinances from eight municipalities across the State. The State immediately objected to their admission, and the court sustained the objection.

Defendant's first witness, Dr. Frank Cushing, a clinical psychologist with considerable experience in human sexual behavior, opined that the magazines in question would not appeal to the prurient interests of the average adult.

Defendant presented another expert witness, Dr. Roderick Bell, a social scientist, who testified regarding a 1985 public opinion telephone poll he had designed and prepared to "throw light" on the question of what are the community standards, *i.e.*, standards of all adults in Illinois, regarding sexually explicit materials. Eight hundred people were surveyed by interviews from a professional field service. The results of the survey showed that 63.5% of the adults surveyed were of the opinion that the standards in Illinois had changed in recent years so that depictions of nudity and sexual activities in movies and publications available only to adults were now "more acceptable." Additionally, 61.6% of those surveyed opined that it was now "all right" in Illinois for bookstores that restricted admittance to adults only to sell publications and movies depicting nudity and actual or pretended sexual activities for adults who want to go inside such establishments and purchase them.

On cross-examination it was brought out that at the conclusion of each interview it was explained to the individual interviewed that the

term "sexual activity," for purposes of the survey, was defined as total male and/or female nudity, actual or pretended sexual intercourse, and all kinds of sexual variations. The participant in the survey was then asked if this definition was what he or she understood the term "sexual activity" to mean. Bell agreed that a person's individual experience would determine what the terms (encompassed within the definition of sexual activity) would mean to that person. Bell opined that 20% to 25% of the adults in Illinois had never been exposed to sexually explicit material and that the magazines in question contained such material.

Defendant's last witness was John Breen, a legal investigator, who had been retained by defendant to visit adult bookstores throughout Illinois for the purpose of determining the availability and acceptability of sexually explicit material at these particular locations. Breen described the exterior and the interior of the bookstores he visited as well as the clientele he observed in the stores. Breen stated that in all the stores there were magazines depicting heterosexual intercourse, anal and oral intercourse, homosexual and lesbian activities, and bondage. In Breen's view, the magazines he purchased in these bookstores were representative of the types of materials that were available and that the "sexual candor" portrayed in the purchased magazines compared to that in the four magazines in question.

At the jury instruction conference defendant tendered the following instructions. Defendant's instruction No. 1:

"The issue of obscenity should be decided in context. You should consider not only the magazines themselves but also the circumstances under which they are to be disseminated. These circumstances include the nature and location of the business offering the magazines, notice to prospective patrons, and precautions, if any, to insure that patrons will not be unwillingly exposed to such magazines."

Defendant's instruction No. 2:

"The issues of prurient interest and patent offensiveness should be decided in context. You should consider not only the magazines themselves but also the circumstances under which they are to be disseminated. These circumstances include the nature and location of the business offering the magazines, notice to prospective patrons, and precautions, if any, to insure that patrons will not be unwillingly exposed to such magazines."

Both of these instructions were refused by the court based on the court's determination that "[i]f it's obscene it's obscene. It doesn't

defined only by case law has been sustained. Thus, the failure here to define "prurient interests" is not a satisfactory ground for striking down the statute. See *People v. Sequoia Books, Inc.* (1987), 160 Ill. App. 3d 315.

 █ Defendant's second contention is that the trial court erred in allowing the State to *voir dire* prospective jurors concerning their beliefs on the obscenity statute and in prohibiting the defendant from asking a similar question.

During *voir dire*, the State was allowed to ask each prospective juror if he or she was aware that a law existed in Illinois prohibiting the sale of obscene material and whether the passage of such a law was of personal concern to the juror. Defense counsel sought to ask the same potential jurors if they had any problems with the fact that the legislature had not passed a law that indicated that it was illegal to enter an adult bookstore. The State immediately objected to the question, and the court sustained the objection. Later, out of the presence of the prospective jurors, defense counsel asked the court's permission to ask this question of the jurors, arguing that his purpose in asking the question was to determine any bias on the part of a respective juror towards defendant. The court denied counsel's request.

Circuit courts are granted broad discretion in conducting and managing *voir dire* (103 Ill. 2d R. 234), and the determination whether to ask certain questions of prospective jurors is within this discretion. (*People v. Chamness* (1984), 129 Ill. App. 3d 871, 873, 473 N.E.2d 476.) The purpose of *voir dire* is to assure the selection of an impartial jury (*People v. Jackson* (1977), 69 Ill. 2d 252, 260, 371 N.E.2d 602; *People v. Chamness* (1984), 129 Ill. App. 3d 871, 873, 473 N.E.2d 476), but *"[v]oir dire* questioning may not be used as a means for pre-educating and indoctrinating prospective jurors to a particular theory or defense or impanelling a jury with particular predispositions [citation]." 129 Ill. App. 3d 871, 873-74, 473 N.E.2d 476.

██ Here, the trial court's denial of the question complained of did not deny defendant an impartial jury. Defense counsel told the court that his purpose in inquiring if a prospective juror was troubled by the legislature's failure to pass a law that it is illegal to enter an adult bookstore was to see if he could get a response such as, "[N]o, I know they haven't but they should," thereby reflecting a bias toward defendant. However, the record indicates that counsel was permitted to ask other questions designed to reflect a prospective juror's bias or predisposition toward adult bookstores. In our opinion, these other questions were sufficient to establish any bias or preconceived notions that the jurors had regarding the legality of possessing obscene mate-

rials and the establishments which sell them.

Moreover, we agree with the State's position that the question asked by the prosecutor was designed primarily to determine if a potential juror would be able to follow the law, whereas the defense counsel's question was aimed at indoctrinating the jury into believing that "the regulation of obscenity is comparable to regulating a citizen's entry of adult bookstores." The question defense counsel sought to ask suggests that the defense was "seeking particular kinds of jurors, rather than simply fair and impartial jurors, the latter of which were all defendant was entitled to have serve." (*People v. Phillips* (1981), 99 Ill. App. 3d 362, 368, 425 N.E.2d 1040.) In this respect, defense counsel's question was inappropriate, and, therefore, the trial court did not abuse its discretion in not permitting counsel to ask it.

■ Next, defendant contends the trial court erred in refusing to admit into evidence adult use ordinances from communities within Illinois, as they were probative on the issue of community standards. This court has previously addressed and rejected this same issue in *People v. Sequoia Books, Inc.* (1986), 146 Ill. App. 3d 1, 496 N.E.2d 740. In that case we held that ordinances, similar to those in the instant case, regulating zoning and employee permits for adult theaters, bookstores, and night clubs, were enacted to fulfill the municipalities' obligation to address the zoning problems raised by the existence of adult bookstores and were not adopted as an acknowledgement of the public's acceptance of materials deemed obscene. (146 Ill. App. 3d 1, 4, 496 N.E.2d 740.) As the issue in that case was identical to that raised here in the instant case, we find no reason to deviate from our prior decision.

Accordingly, we find the trial court did not err in refusing to admit the ordinances into evidence, as they did not constitute evidence of the statewide community standard for sexually explicit materials.

■ ■ Defendant's fourth contention is that the trial court erred in failing to give to the jury defendant's instruction Nos. 1 and 2, both non-Illinois Pattern Jury Instructions (IPI) instructions, because these instructions instructed the jury to consider the context of the dissemination of the materials in question as a factor in determining whether or not a magazine offends contemporary community standards. We note, first of all, that we have found no case in Illinois that adheres to the principle that the "context" of dissemination of material is relevant to determining whether or not material is patently offensive.

Jury instructions should not be misleading or confusing (*People v. Gathings* (1981), 99 Ill. App. 3d 1135, 1139, 425 N.E.2d 1313), and

matter whether it's sold in an adult bookstore or in a drug store."

The jury found defendant guilty of the crime of obscenity on all counts. The court subsequently denied defendant's post-trial motion and ordered defendant to pay fines and costs totaling $1,123.

Defendant appeals, contending: (1) that the Illinois obscenity statute is so vague, indefinite, and overbroad as to render it unconstitutional; (2) that the trial court erred in allowing the State to *voir dire* prospective jurors concerning their beliefs on the obscenity statute and in prohibiting the defendant from asking a similar question; (3) that the trial court erred in refusing to admit into evidence adult use ordinances from communities within Illinois; (4) that the trial court erred in failing to give to the jury defendant's instructions Nos. 1 and 2; and (5) that the defendant was not proved guilty beyond a reasonable doubt.

■ Defendant's first contention is that the Illinois obscenity statute, effective January 1, 1986, is unconstitutionally vague, indefinite, and overbroad, particularly because of its failure to define "prurient interests." Defendant implies that this failure has resulted in an amended law which is as vague and overbroad as the former obscenity statute.

Under the amended statute:

"Any material or performance is obscene if: (1) the average person, applying contemporary adult community standards, would find that, taken as a whole, it appeals to the prurient interest; and (2) the average person, applying contemporary adult community standards, would find that it depicts or describes, in a patently offensive way, ultimate sexual acts or sadomasochistic sexual acts, whether normal or perverted, actual or simulated, or masturbation, excretory functions or lewd exhibition of the genitals; and (3) taken as a whole, it lacks serious literary, artistic, political or scientific value." Ill. Rev. Stat. 1985, ch. 38, par. 11—20(b), as amended by Pub. Act 84—709, eff. Jan. 1, 1986.

As the State correctly points out, the preceding definition of obscenity is in compliance with the guidelines set forth by the United States Supreme Court in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, for State statutes designed to regulate obscene materials. In *Miller*, the Supreme Court stated:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest [citation]; (b) whether the work

depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.)

Additionally, the Supreme Court provided examples of what a State statute could define for regulation under part (b) of the standard declared in that opinion:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." (413 U.S. 15, 25, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.)

Clearly, the Illinois statute has closely followed the *Miller* guidelines.

Moreover, our review of the legislative debates of the amended obscenity statute shows it was the clear intent of the legislature to redefine the term "obscene" so as to make it conform with the *Miller* standards. (84th Ill. Gen. Assem.; Senate Proceedings, May 8, 1985, at 138-39; 84th Ill. Gen. Assem., House Proceedings, June 24, 1985, at 160-64.) Although defendant claims the amended statute is overbroad, the debates indicate that the statute was designed to provide a tighter, rather than a broader, definition of obscenity. As Representative Churchill explained, "What we're looking at is something that is going to give prosecutors a chance to define [obscenity] within limited terms, rather than the broader scope of the former Bill." 84th Ill. Gen. Assem., House Proceedings, June 24, 1985, at 164.

As the amended obscenity statute strictly adheres to the standards set forth in *Miller*, the seminal case on obscenity, and as our courts have consistently rejected arguments that the former statute is unconstitutionally vague or overly broad (*People v. Patroff* (1986), 141 Ill. App. 3d 483, 491, 490 N.E.2d 148, *cert. denied* (1986), 479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct. 251; *People v. Ward* (1976), 63 Ill. 2d 437, 440-41, 349 N.E.2d 47), we conclude here, as we did in *People v. Sequoia Books, Inc.* (1987), 160 Ill. App. 3d 315, that the amended, more specific obscenity statute is constitutional.

■ Further, the statute is not unconstitutional because of its failure to define "prurient interest." The United States Supreme Court in *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 505 n.13, 86 L. Ed. 2d 394, 407 n.13, 105 S. Ct. 2794, 2803 n.13, pointed out in footnote 13 that many State statutes leave the word "prurient" undefined and that an obscenity statute which left the term undefined or

the jurors are properly instructed if all the instructions construed together properly inform them of the applicable law. (*People v. Gerecke* (1977), 45 Ill. App. 3d 510, 517, 359 N.E.2d 1178.) A non-IPI instruction should be given if a pattern instruction does not contain an accurate instruction on the subject the jury should be instructed upon and if the tendered non-IPI instruction is simple, brief, impartial and free from argument. (87 Ill. 2d R. 451(a); *People v. Sequoia Books, Inc.* (1986), 145 Ill. App. 3d 1054, 1064, 495 N.E.2d 1292.) The decision whether to give a non-IPI instruction is within the discretion of the trial court. *People v. Moore* (1980), 89 Ill. App. 3d 202, 209, 411 N.E.2d 579.

■ Defendant's instruction No. 1 stated:

"The issue of obscenity should be decided in context. You should consider not only the magazines themselves but also the circumstances under which they are to be disseminated. These circumstances include the nature and location of the business offering the magazines, notice to prospective patrons, and precautions, if any, to insure that patrons will not be unwillingly exposed to such magazines."

Defendant's instruction No. 2 stated:

"The issues of prurient interest and patent offensiveness should be decided in context. You should consider not only the magazines themselves but also the circumstances under which they are to be disseminated. These circumstances include the nature and location of the business offering the magazines, notice to prospective patrons, and precautions, if any, to insure that patrons will not be unwillingly exposed to such magazines."

In our opinion, defendant's instruction Nos. 1 and 2, non-IPI instructions, were not only partial and argumentative but also inaccurate statements as to the applicable obscenity law in Illinois. As stated, defendant's instructions indicate that whether material is obscene or appeals to the prurient interest and is patently offensive to community standards depends upon where the material is disseminated. Further, the implication here is that if the magazines were purchased at an adult bookstore which properly warns prospective patrons of the nature of the magazines, then the magazines could not offend community standards. This clearly is not the law in Illinois. As the trial judge stated in refusing defendant's instructions, "If it's obscene, it's obscene. It doesn't matter whether it's sold in an adult bookstore or in a drug store." We agree with the court and find that the inclusion of defendant's instructions would have unduly confused the jurors as

to the applicable law.

Also, we note that although defendant claims his opening and closing arguments "focused entirely on the circumstances of dissemination as a component of contemporary community standards" and thus his instructions dealing with dissemination should have been given to the jury, we have reviewed defendant's arguments and fail to see the correlation between the substance of those arguments and the instructions as tendered. Given the circumstances and the instructions that were tendered to the jury, we find no abuse of the court's discretion in refusing defendant's instruction Nos. 1 and 2.

Defendant's final contention is that the State failed to prove it guilty beyond a reasonable doubt of obscenity because defendant produced survey evidence in the form of expert testimony and exhibits showing the acceptability of "comparable materials" by communities throughout the State while the State presented no evidence of a statewide community standard. Initially, we find that the jury need not accept the opinion of an expert (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, 273 N.E.2d 809; *People v. Slago* (1978), 58 Ill. App. 3d 1009, 1016, 374 N.E.2d 1270), and that the fact that the jury did not adopt the standard which defendant's expert maintained the survey established does not mean the jurors failed to apply a community standard.

Here, the jurors heard Dr. Roderick Bell's testimony regarding how his survey was conducted and what the results indicated. The jurors also heard Dr. Bell testify on cross-examination that those interviewed in the survey were told that the term "sexual activity," as used in the questions on the survey, included "total male and/or female nudity, actual or pretended sexual intercourse, and all kinds of sexual variations." Dr. Bell admitted that the personal experience of the individuals interviewed would determine what these activities would mean to those individuals. Also, it was Dr. Bell's opinion that probably 20% to 25% of the people in Illinois had not been exposed to sexually explicit materials and that the magazines in question contained such material. As Dr. Bell's interviewers did not specifically cite examples of what was meant by actual or pretended intercourse or sexual variations, there is no way of knowing whether those interviewed, who responded that such sexual activities were "more acceptable" or "all right" to be depicted in movies and magazines, would have responded as they did had the type of activities depicted in the magazines in question been described to them.

Although the jury heard and saw Bell's evidence, it also viewed the magazines. It was for the jury to pass on the credibility of the

witnesses, to weigh the evidence, and to draw all reasonable inferences therefrom. *(Koris v. Norfolk & Western Ry. Co.* (1975), 30 Ill. App. 3d 1055, 1058, 333 N.E.2d 217.) Because the jurors did not decide the case as defendant wished does not mean that the jurors did not consider the survey results or Dr. Bell's testimony, or that they decided incorrectly.

■■ Moreover, as the State points out, material containing "sexual activities" is not the same as obscene material unless it meets the standards of the obscenity statute (Ill. Rev. Stat. 1985, ch. 38, par. 11—20(b), as amended by Pub. Act 84—709, eff. Jan. 1, 1986). Therefore, defendant's survey evidence, which failed to disclose the community's acceptance of materials meeting the requirements of section 11—20(b), was not conclusive as to whether magazines like those in question would be acceptable to statewide community standards regarding obscene materials. In light of this fact, the State was not required to present evidence of community standards to rebut defendant's evidence. Moreover, casual examination of the magazines in question establishes their obscene nature. Clearly, the magazines themselves demonstrate that the State met its burden in proving defendant guilty beyond a reasonable doubt of obscenity. *People v. Hall* (1986), 143 Ill. App. 3d 766, 773, 491 N.E.2d 757.

Therefore, based on the above reasoning, the judgment of the circuit court of Kendall County is affirmed.

Affirmed.

DUNN and NASH, JJ., concur.