Roy Edsel DENTON, Appellant,

v.

STATE of Indiana, Appellee.

No. 482S162.

Supreme Court of Indiana.

Nov. 16, 1983.

Aaron E. Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Roy Edsel Denton, the defendant-appellant, was convicted by a jury of rape, Ind. Code Ann. § 35–42–4–1, and was also determined to have accumulated two prior unrelated felony convictions as defined in the habitual offenders statute, Ind.Code § 35–50–2–8. He was sentenced to serve a total of forty-five years' imprisonment. He now presents this appeal raising the following claims:

(1) Whether the trial court erred in overruling his objections to questions asked of him on cross-examination concerning past convictions that were alleged in the habitual offender count of the information;

(2) whether the trial court erred in refusing to permit the introduction by the defendant of letters written by the alleged victim to appellant; and

(3) whether the trial court erred in the manner in which it responded to the jury's request to be reinstructed on the offense of rape.

The evidence from the record supporting the jury's verdict shows that a fifteen year old girl, S.M., corresponded with appellant while he was a cellmate of her brother. After his release appellant appeared unexpectedly at her house, and after they talked for a while, some children then present left to go swimming. After they had gone, appellant locked the door, made advances to her which were rebuked, then beat her with his fists, bruising her face and causing it to swell, and pulled her about by the hair, causing a large clump of it to fall out. In so doing he forced her to submit to sexual intercourse.

I.

Appellant was faced with rape and habitual offender counts. He filed a pre-trial motion in limine to prevent the prosecution from attempting impeachment of him during the first phase of the trial on the basis of prior convictions stated in the habitual offender count, should he choose to become a witness. The motion was denied, and at trial he did testify in support of his defense of consent and specific questions as to whether he had been so previously convicted were permitted to be asked him on cross-examination over the objection of defense counsel. Appellant persisted in refusing to answer these questions, asserting the privilege against self-incrimination before the jury, and was held in contempt of court. He was immediately sentenced to a ninety day term of imprisonment to commence after any sentence given on the pending charge. In fact he never admitted or denied these prior convictions and the prosecution did not attempt to prove them during the first phase of the trial. Appellant's first claim on appeal is that the rulings of the trial court impinged upon or impermissibly fettered his right to be free from compulsory self-incrimination, a right protected by the Fifth Amendment and Art. I, Sec. 14 of the Indiana Constitution.

The jury only heard the specific questions propounded by the trial prosecutor on past convictions, the objections of defense counsel, the ruling of the trial court, and the invocation of the privilege by the defendant. It did not hear from his mouth any admissions of fact regarding past convictions. Is there a reviewable constitutional claim under these circumstances or not? This question was resolved in *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, at n. 37, 384 U.S. at 468–69, 86 S.Ct. at 1624–25:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

If the pre-trial invocation of the privilege is susceptible of use at trial which impermissibly penalizes, then requiring an in-trial invocation of the privilege could likewise impermissibly penalize. We find therefore that we should reach the merits of appellant's constitutional claim, even though he provided no incriminating information, but only invoked the privilege.

■ The privilege against self-incrimination protects the accused in a criminal proceeding from (1) being compelled (2) to give cognitive information (3) which may be incriminating. *Hollars v. State,* (1972) 259 Ind. 229, 286 N.E.2d 166; *Ross v. State,* (1932) 204 Ind. 281, 182 N.E. 865. If the accused at trial chooses not to testify at trial, the privilege forbids comment by the prosecution on such silence as well as instructions by the court that such silence is evidence. *Griffin v. State of California,* (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. If the accused at trial chooses to testify, a waiver of the privilege is deemed to have occurred. The general perimeters of that waiver were set in *Harrison v. United States,* (1968) 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047, where Justice Stewart wrote:

"A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him." 392 U.S. at 222, 88 S.Ct. at 2010.

The choice to testify also opens the way for the prosecution on cross-examination of the accused to use the traditional truth-testing devices of the adversary system. *Harris v.* *New York,* (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1. The use of prior convictions is one such device. *Ashton v. Anderson,* (1972) 258 Ind. 51, 279 N.E.2d 210.

■ Under *Harris v. New York, supra,* a prior inconsistent statement of the defendant, inadmissible in the State's case-in-chief because taken in violation of *Miranda* safeguards, may be used for impeachment even though in substantive content it strongly and directly supports guilt. In the case at bar, admissions of having been previously convicted called for by the prosecutor's questions, in substantive content, support the fact of prior convictions as alleged in the habitual offender account. If the privilege against self-incrimination does not bar the impeachment use of such incriminating prior inconsistent statements, it would not bar the impeachment use of these prior convictions. The use of prior convictions on cross-examination for impeachment would be consistent with the privilege. The rulings of the court were not unconstitutional.

■ Appellant also contends that these rulings were an abuse of discretion. This legal claim was addressed in *Jameison v. State,* (1978) 268 Ind. 599, 377 N.E.2d 404, and *Griffin v. State,* (1981) Ind., 415 N.E.2d 60. The Court found no abuse of discretion under circumstances such as are presented here. The Court held that the determination of the fact of prior crimes was supported by direct evidence produced at the habitual offender phase of the trial, and that therefore there was no undue prejudice to the defendant from the refusal to limit cross-examination of the defendant at the guilt or innocence phase of the trial as to his prior convictions. We find no new grounds here upon which to reconsider these previous cases as suggested by appellant.

II.

■ Appellant next claims that the trial court erred in not allowing into evidence eight lengthy letters. They were written to appellant by the alleged victim, S.M., and contain among many things a description of the volatile relationship between S.M. and

her mother. Appellant claims that the relationship would tend to establish that S.M. had a reason to tell less than the whole truth about whether she had consented to the sexual intercourse. The trial court ruled that the letters were irrelevant. In *Lawrence v. State,* (1972) 259 Ind. 306, 286 N.E.2d 830, this Court stated:

> "The admission or rejection of evidence is not a matter of judicial grace. It is a legal right. [Citations omitted.] To be admissible, evidence must logically tend to prove a material fact. [Citation omitted.]" 259 Ind. at 309–10, 286 N.E.2d 830.

We would agree that the fact that a witness had a motive to exaggerate or falsify testimony would be material. The letters, generously construed in favor of appellant's contention, show rebellious acts and statements by the girl in response to attempts by her mother to restrict her dating. While the language used by the writer is uncommon, the stressful situation described would certainly not be uncommon, and would not, we believe, logically establish a special motive to exaggerate or falsify. We find no error in the rejection of these letters.

### III.

During jury deliberations the jury foreperson sent the trial judge this question in written form:

> "May we have a written definition of the word rape."

Without notification to parties or counsel, the judge responded by sending the jury all of the final written jury instructions. The jury returned its verdict of guilty of rape.

Appellant's claim is twofold: namely, (1) that the instructions should have been reread to the jury by the judge rather than delivered in written form, and (2) that the instructions should not have been provided in an *ex parte* fashion. The failure of the trial court to read final instructions to the jury is reversible error, even where no request has been made for the reading. *Purdy v. State,* (1977) 267 Ind. 282, 369 N.E.2d 633; *Williams v. State,* (1978) 269 Ind. 430, 381 N.E.2d 458. It is

also the general rule of law that jury instructions are not to be sent to the jury room. However, where final instructions are first read to the jury in open court before the parties, a subsequent error in sending those instructions to the jury room is harmless. *Jameison v. State, supra.* The record of proceedings shows that the judge personally instructed the jury, and there is no contention that the written instructions delivered to the jury in response to the jury request were never read aloud by the judge. The failure of the trial court to read the final instructions to the deliberating jury in response to the inquiry was harmless.

*Ex parte* communications between judge and deliberating jury are forbidden. However, the existence of such communications is not per se grounds for reversal, *Foster v. State,* (1977) 267 Ind. 79, 367 N.E.2d 1088, and on appeal we are concerned with clarity of the record of the salient events, and whether the inference of prejudice stands rebutted. *Harris v. State,* (1967) 249 Ind. 681, 231 N.E.2d 800; *Childers v. State,* (1980) Ind.App., 408 N.E.2d 1284. Here the record satisfactorily shows that the communication consisted of the delivery by the court of the final instructions and no more. This response, consisting of the total body of final jury instructions, was properly limited in substance. *Jenkins v. State,* (1981) Ind., 424 N.E.2d 1002 (Givan, C.J., dissenting). It is therefore concluded that the inference of prejudice arising from the fact that the judge responded to the jury *ex parte* is rebutted.

### IV.

Appellant pro se has filed a pleading entitled: "Combined Motion to Discharge Court Appointed Appeal Counsel, and Withdraw Appeal Brief to be Refiled in Sixty (60) Days by Defendant". In it he requests that he be permitted to withdraw the appeal brief and file a new brief *pro se.* This motion was received by the Court after the completion of all briefing, and if granted would require a new answer brief by the State, and would entail granting special relief from the time constraints in the rules

governing appellate procedure not accorded others. Furthermore, a grant of this motion would permit parties appellant to repudiate at will their express requests for appointment of appellate counsel occurring in the trial court pursuant to the dictates of Ind.R.Crim.P. 11. To permit the introduction of this form of activity in criminal appeals would result in substantial disruption of the administration of the courts. The motion is therefore denied.

The conviction is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.