George SALIBA, Appellant,

v.

STATE of Indiana, Appellee.

No. 2-383A74.

Supreme Court of Indiana.

Nov. 13, 1985.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., William E. Daily, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice, dissenting.

I respectfully dissent to the denial of transfer without opinion.

I believe the Court of Appeals egregiously erred in two respects: first, in weighing the evidence which had been submitted to the trial court and coming to the opposite conclusion on the weight of that evidence; and secondly, even if one could say for the sake of argument that this is a matter of law which may be determined by an appellate court, the determination reached by the Court of Appeals I believe to be erroneous.

In the case at bar appellant was charged with the distribution of obscene matter, specifically, a film depicting homosexual activity. As part of his defense he employed Dr. Roderick Bell of California to conduct a public opinion poll to determine community standards in Marion County regarding the depiction of sexual activity in movies and publications. The results of that poll were offered as evidence by appellant and explained by the testimony of Dr. Bell. Dr. Bell testified that his poll was a valid measure of the degree of public ac-

ceptance of sexually explicit materials in Marion County.

In retaliation the State presented the testimony of Dr. Brian Vargus, who testified that the manner in which the poll was conducted potentially generated 30 percent "pseudo-opinion." In the opinion of the Court of Appeals, a statement is made "[t]he determination of obscenity, therefore, depends on prevailing community standards." There is no question but what this general statement is the correct measure of what constitutes obscenity. I believe the State is correct in its observation that in order for a poll to be valid and helpful to the jury in making their determination it must address itself to the contemporary community standards as they relate to "prurient interest in sex."

The poll in question, conducted by Dr. Bell, did not ask such a question. The questions in his poll merely addressed whether or not it was acceptable for the average adult to see a depiction of actual or pretended sexual activity. This and the other questions asked by Dr. Bell in his poll were extremely watered down and general when considered in connection with the charges against appellant.

The trial judge conducted a full hearing, out of the presence of the jury, in which she listened to the testimony of both Dr. Bell and Dr. Vargus. She also had before her the questions asked by Dr. Bell in his poll. There was ample evidence from which the trial judge could determine that the poll was directed to what was "acceptable" to the general public as opposed to the more pertinent question of what was "patently offensive" to the public. *See Commonwealth v. Trainor* (1978), 374 Mass. 796, 374 N.E.2d 1216.

There was also ample evidence from which the trial judge was justified in finding that the poll was irrelevant because the basic questions asked were unrelated to the film which appellant was accused of selling. Even if one attempts to weigh the evidence, it becomes clear that Dr. Bell's questions were not specifically related to the issues before the trial court. In exam-

ining the questions of the poll and comparing them with the charges in this case, it should come as no surprise to any examiner that the taker of the poll was employed by the appellant for the specific purpose of testifying at his trial.

A trial judge has broad discretion to rule on the relevance of evidence and the qualifications of experts. *State v. Hall* (1982), Ind., 432 N.E.2d 679. In *McCraney v. Kuechenberg* (1969), 144 Ind.App. 629, 634, 248 N.E.2d 171, 174, the Court of Appeals stated, "[w]hether a witness' sources of information are sufficiently reliable to warrant reception of an opinion is for the trial court in exercise of its discretion to determine and we hold that the admissibility of such opinion is necessarily dependent upon the laying of a proper factual foundation."

The Court of Appeals acknowledges that no Indiana appellate decision has previously addressed the admissibility of a public opinion poll. It then proceeds to cite *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, wherein it was held that a state trooper could testify as an expert witness concerning a vehicular speed based on various formulae and calculations. It was stated in that opinion that once a state trooper qualified as an expert witness on the subject, the question of what method of calculation he used or his expertise in a particular calculation went to the weight of his evidence not its admissibility. I see no correlation whatever with our decision in *Martin, supra* and the case at bar. In *Martin* we were dealing with the direct testimony of the expert and whether or not he should be allowed to testify. In the case at bar we are not dealing with the direct testimony of Dr. Bell, but are dealing with the admissibility of a poll which he had taken. If we assume for the sake of argument that under some circumstances a poll would be proper evidence in this type of case, the facts remain that the trial judge heard evidence from Dr. Bell supporting his poll and evidence from Dr. Vargus disputing the legitimacy of the poll. There was no issue as to the qualifications of either of those witnesses, nor is Dr. Bell's competency as a pollster at issue. The question is whether or not the particular poll he happened to take in the Indianapolis area, notwithstanding its validity, was germane to the subject matter before the trial court. This controverted fact was decided by the trial court against the admission of the poll. This determination of fact by the trial judge should not be second-guessed in the Court of Appeals or in this Court.

I would, therefore, grant transfer in this case and affirm the trial court.

PIVARNIK, J., concurs in dissent.