THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEQUOIA BOOKS, INC., Defendant-Appellant.

Second District   Nos. 2—86—0563, 2—86—0577 cons.

Opinion filed August 24, 1987.—Rehearing denied October 5, 1987.

J. Steven Beckett, of Reno, O'Byrne & Kepley, P.C., of Champaign (Michael J. Zopf, of counsel), for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel) for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Following separate jury trials, defendant, Sequoia Books, Inc., was found guilty of obscenity in two cases. Defendant was fined $1,000 plus costs and $924 plus costs, respectively. Defendant appeals from both convictions.

On August 9, 1985, Judge John L. Peterson issued a search warrant for the Denmark Bookstore in Aurora, Illinois, which was owned and operated by the defendant, to search for evidence of the offense of obscenity (Ill. Rev. Stat. 1985, ch. 38, par. 11—20) and to seize any "magazines containing depictions or portion thereof of the following: cunnilingus, fellatio, anal intercourse, excretion of semen from penis onto other persons, masturbation, vaginal or anal insertion of prosthetic devices, insertion of tongue into anus." Attached to the complaint for search warrant were the affidavits of Glenn Calvert and Ricky M. Holman, investigators for the Kendall County State's Attorney's office. Calvert's affidavit set forth that he had visited defendant's bookstore and purchased three magazines entitled Cum Shootout, Chain Gang Bang, and Tightropes. Each magazine depicted more than one sexual act described in the search warrant. Calvert spent 15 minutes in the bookstore and observed several hundred magazines, many, if not all, of which depicted acts described in the warrant. All of these magazines were offered for sale to the public. Holman's affidavit stated that numerous criminal charges had been filed

in Kendall County under section 11-20 of the Criminal Code of 1961 (Act) (Ill. Rev. Stat. 1985, ch. 38, par. 11—20) against various persons resulting from the purchase of magazines and movies from the defendant's bookstore.

Armed with the search warrant, Calvert, Holman, and others, went to the Denmark Bookstore and seized 48 different magazines.

On February 10, 1986, Illinois State Police investigator Harold Andrews presented an application for search warrant to Judge James M. Wilson for the Denmark Bookstore, again for seizure of magazines containing depictions of sexual activities and bondage. According to Andrew's affidavit, he had been in the Denmark Bookstore on January 2 and February 6, 1986, and had purchased a total of eight magazines which were tendered to Judge Wilson for review. Judge Wilson issued a search warrant for Denmark Bookstore for the seizure of magazines containing depictions of sexual activity, identical to what was described in the search warrant of August 30, 1985, but which also included "depictions of male or female persons with genitals or breasts being fettered or bound or otherwise physically restrained, insertion of objects into penis or anus."

Again, armed with the search warrant, Andrews and Kendall County investigators went to the Denmark Bookstore and seized 177 magazines.

The defendant was then charged in two separate cases with one count of obscenity. Each complaint charged that the defendant had offered obscene magazines for sale, each complaint incorporating by reference the list of magazines seized pursuant to the applicable search warrant. After pleading not guilty in each case, defendant filed motions to quash the search warrant, suppress evidence, and the return of the items seized, arguing that the search and seizure procedures violated the defendant's constitutional rights under the first, fourth, and fourteenth amendments to the United States Constitution. Following an evidentiary hearing, the motions in both cases were denied.

The defendant also filed motions to dismiss in each case, contending that the complaints were improperly drawn in that a large number of magazines had been included within a single count. Further, the motions to dismiss in each case challenged the constitutionality of the obscenity statute in both its pre-1986 form and its post-1986 form. Following hearings in both cases, the motions to dismiss were denied.

Each case then proceeded to trial. In both cases, the parties stipulated that the defendant owned and operated the Denmark Bookstore and offered the charged magazines for sale on the dates in question, knowing the nature and contents of the magazines. In each case, the

State presented testimony that the magazines lacked value, had a negative and dehumanizing effect on the average adult, and that each of the magazines appealed to the prurient interest of the average adult. In addition, at the trial of the second case, the State also presented testimony that the magazines had no serious value in the fields of literature or art.

In each case, the defendant presented evidence of contemporary community standards through the use of a public opinion poll conducted in 1983, the results of which were designed to establish the attitudes of adults living across the State of Illinois to sexually explicit materials. There was also testimony concerning the various adult bookstores in communities throughout Illinois and the type of magazines that were available for sale there. The defendant also presented testimony that the magazines in both cases did not appeal to prurient interest and, instead, appealed to the normal curiosity of the average adult about sex. Finally, defendant's witnesses testified that the magazines would not lead the average adult to commit antisocial acts and that the magazines had value in that they provided a release and entertainment for a segment of the population. In both cases, defendant offered into evidence certified copies of the adult use ordinances from several municipalities throughout Illinois as evidence of community standard. The trial court sustained the State's objections to the admission of the ordinances on the basis of relevancy. At the conferences on jury instructions in the respective cases, the State offered an instruction which permitted the jury to find the defendant guilty of obscenity if they found a single magazine to be obscene. The defendant tendered instructions which would require the jury to find all of the magazines obscene in order to find defendant guilty of obscenity. In both cases, the trial court, accepting the State's theory, ruled that the State could proceed in a single count for as large a number of magazines as it chose and obtain a conviction regardless of a finding by the jury that some magazines were not obscene and thus constitutionally protected. In each case, over defendant's objections, a special interrogatory was given to the jury which required the jury to answer "yes" or "no" as to the obscenity of each magazine on trial. Additionally, a general verdict was given to the jury.

Further, in each case, the trial court, over the defendant's objection, gave the State's instruction which allowed the jury to rely on their "collective observations" in applying Illinois contemporary standards. Also, in each case, the defendant tendered, but the trial court refused to give, instructions which would have informed the

jury that the issue of obscenity should be decided in the context of dissemination of the magazine.

In each case, the trial court denied defendant's motion for a directed verdict at the close of the State's case in chief and at the close of all the evidence.

The jury returned a general verdict finding the defendant guilty of obscenity in each case. In the first case, the special interrogatory was completed, finding eight magazines obscene and 40 not obscene. In returning its verdict, however, the jury initially answered the "yes" question as to the eight magazines and left 40 blanks on the special interrogatory. The trial court accepted the general verdict and instructed the jury to continue deliberating. A short time thereafter, the jury returned with its findings that 40 magazines were not obscene. In the second case, the special interrogatory was completed, finding 170 magazines obscene and seven not obscene.

Defendant's post-trial motion in each case was denied, and defendant was sentenced to pay fines and costs. This appeal followed.

Defendant contends, first, that the search warrant procedure utilized in both cases did not meet the strict requirements necessary when first amendment freedoms are implicated in that: the search warrant applications and supporting documents failed to meet the standard of probable cause; the search warrant was overly broad and allowed the seizure of protected, as well as unprotected, material; and the warrant process itself was designed to do economic harm to the operation of defendant's bookstore.

The defendant concedes that this court's opinions in *People v. Sequoia Books, Inc.* (1986), 145 Ill. App. 3d 1054, and *People v. Patroff* (1986), 141 Ill. App. 3d 483, *cert. denied* (1986), 479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct. 251, are dispositive of the issues raised regarding the search warrant in these cases. Although the defendant urges us to reconsider our decisions in those two cases, we decline to do so.

Next, the defendant contends that section 11–20 of the Act (Ill. Rev. Stat. 1985, ch. 38, par. 11–20), both in its form prior to January 1, 1986, and its form after the date, is unconstitutional.

■ We observe first that our supreme court has consistently upheld the constitutionality of the Act in its pre-1986 form. (See *People v. Ward* (1976), 63 Ill. 2d 437; see also *People v. Sequoia Books, Inc.* (1986), 145 Ill. App. 3d 1054; *People v. Patroff* (1986), 141 Ill. App. 3d 483, *cert. denied* (1986), 479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct. 251.) Recently, the United States Supreme Court rendered its decision in *Pope v. Illinois* (1987), 481 U.S. ___, 95 L. Ed. 2d 439, 107 S. Ct. 1918. In that case, the court determined that in the prosecution for

the sale of allegedly obscene materials, the jury should not have been instructed to apply community standards in determining whether material taken as a whole lacks serious literary, artistic, political, or scientific value, but rather the trier of fact is required to assess whether a reasonable person would find such value in the material, taken as a whole. The court remanded the case to this court for a determination as to whether the error was a harmless one, stating as follows:

> "The question remains whether the convictions should be reversed outright or are subject to salvage if the erroneous instruction is found to be harmless error. Petitioners contend that the statute is invalid on its face and that the convictions must necessarily be reversed because, as we understand it, the State should not be allowed to preserve any conviction under a law that poses a threat to First Amendment values. But the statute under which petitioners were convicted is no longer on the books; it has been repealed and replaced by a statute that does not call for the application of community standards to the value question. Facial invalidation of the repealed statute would not serve the purpose of preventing future prosecutions under a constitutionally defective standard. [Citation.]" (481 U.S. ____, ____, 95 L. Ed. 2d 439, 445-46, 107 S. Ct. 1918, 1921.)

On that basis, therefore, we decline to find the pre-1986 Act unconstitutional.

Effective January 1, 1986, the Act was changed to provide as follows:

> "Any material or performance is obscene if: (1) the average person, applying contemporary adult community standards, would find that, taken as a whole, it appeals to the prurient interest; and (2) the average person, applying contemporary adult community standards, would find that it depicts or describes, in a patently offensive way, ultimate sexual acts or sadomasochistic sexual acts, whether normal or perverted, actual or simulated, or masturbation, excretory functions or lewd exhibition of the genitals; and (3) taken as a whole, it lacks serious literary, artistic, political or scientific value." Ill. Rev. Stat. 1987, ch. 38, par. 11—20(b).

Defendant contends that the new Act is unconstitutional because it fails to define the term "prurient interest." Defendant relies on *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 86 L. Ed. 2d 394, 105 S. Ct. 2794. In that case, the United States Supreme Court held unconstitutional a statutory definition of "prurient interest" which would have included materials that appealed to "lust." The

court reasoned that a danger existed that such a definition would include materials which appeal to the average adult's normal curiosity about sex and, as such, would not be obscene. Defendant argues that same danger exists under the present Act.

*Brockett* is distinguishable from the case before us in that our Act provides no definition of the term "prurient interest." As the State points out, in *Brockett*, the court held that the failure to define the term "prurient" was not a satisfactory ground for striking down the statute.

■ Comparing the present Act with the definition of obscenity as set forth in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, we find that the present statute meets the guidelines set forth in *Miller*, and we conclude that the present Act is constitutional.

■ Next, the defendant contends that the trial court erred in refusing to admit the adult use ordinances into evidence. This same argument was raised and disposed of against the defendant in *People v. Sequoia Books, Inc.* (1986), 146 Ill. App. 3d 1. Further, we agree with the State that the defendant's reliance on *Smith v. United States* (1977), 431 U.S. 291, 52 L. Ed. 2d 324, 97 S. Ct. 1756, is misplaced since that case dealt with the introduction of a State statute defining obscenity in a prosecution for using the mails to distribute obscene material. In the present case, the ordinances which defendant sought to introduce do not define obscenity but geographically regulate numerous forms of sexually related activities regardless of whether they are considered obscene. We conclude that the trial court did not err in refusing to admit the ordinances into evidence.

■ Next, defendant contends the trial court erred in giving the following instruction tendered by the State:

"In determining whether a magazine is obscene, applying contemporary community standards, you may consider the material in light of your collective observations of life in the State of Illinois, but you must not judge it by your own personal standards even if you are personally offended by the material."

In *People v. Sequoia Books, Inc.* (1986), 145 Ill. App. 3d 1054, we determined that while the language "you may consider the material in light of your collective observations in life" was repetitive and unnecessary, the same instruction, read together with all of the other instructions, including the instruction defining obscenity, properly informed the jury that the magazines must not be judged by each juror's own personal standards but by a community standard of the whole State, and, therefore, the submission of the instruction was not

harmful under the circumstances.

However, as we noted above, in *Pope v. Illinois* the United States Supreme Court determined that the giving of such an instruction was error. The court did not determine whether the error required the reversal of the convictions in that case but remanded to this court for that determination. *Pope v. Illinois* (1987), 481 U.S. ___, ___, 95 L. Ed. 2d 439, 447, 107 S. Ct. 1918, 1922-23.

After reviewing the record in this case, we are of the opinion that no rational juror, properly instructed and viewing the evidence in these cases, could find value in these magazines. We are aware that in *People v. McGeorge* (1987), 156 Ill. App. 3d 860, the Appellate Court for the Fourth District determined that the giving of a similar instruction was error requiring reversal of an obscenity conviction and a new trial. *McGeorge*, however, is distinguishable from the case at bar, for in that case the State offered no testimony as to value, whereas in the case before us the State presented testimony that the magazines in question had no value. Therefore, although the giving of the instruction was error, we conclude it to be harmless.

■ Next, defendant contends that the trial court erred in refusing to give the following instruction tendered by the defendant:

> "The issue of obscenity should be decided in context. You should consider not only the magazines themselves but also the circumstances under which they are to be disseminated. The circumstances include the nature and location of the business offering the magazines, notice to respective patrons, and precautions, if any, to insure that patrons will not be unwillingly exposed to such magazines."

The above instruction was a non-Illinois Pattern Jury Instruction (IPI). A non-IPI instruction should be used only if a pattern instruction does not contain an accurate instruction on the subject that the jury should be instructed upon and if the tendered non-IPI instruction is simple, impartial, and free from argument. (*People v. Sequoia Books, Inc.* (1986), 145 Ill. App. 3d 1054, 1064; 87 Ill. 2d R. 451(a).) The decision whether to give a non-IPI instruction is within the discretion of the trial court. *People v. Moore* (1980), 89 Ill. App. 3d 202, 209.

■ In *People v. Pope* (1985), 138 Ill. App. 3d 726, *rev'd and remanded on other grounds* (1987), 481 U.S. ___, 95 L. Ed. 2d 439, 107 S. Ct. 1918, this court upheld the trial court's refusal to give an instruction which asked the jury to give particular consideration to survey evidence introduced by the defendant in that case. We held that the instruction was properly refused on the basis that it unduly

underscored the importance of one piece of evidence. That same reasoning is applicable here, and, therefore, we conclude that the refusal to give the above-quoted instruction was not error.

■ Finally, the defendant contends that the combining in each case of multiple charges of obscenity with general verdicts of guilty or not guilty followed by a special interrogatory in reference to the obscenity of each magazine was improper. The defendant argues that it could very well have been found guilty in each case because of the collective impact of all the material.

Defendant relies on *Street v. New York* (1969), 394 U.S. 576, 22 L. Ed. 2d 572, 89 S. Ct. 1354. In that case, the defendant was charged in a single-count information with desecrating a flag by burning it and by oral statements. The United States Supreme Court reversed his conviction on the basis that there was an unacceptable danger that the trier of fact will have regarded the two acts as intertwined and might have rested the conviction on both together even though one was constitutionally protected and the other was not. Nonetheless, it is well established that separate offenses can be charged in different counts or in one count of an indictment if the offenses are part of a single transaction. *People v. McMullen* (1948), 400 Ill. 253; *People v. Johnson* (1967), 79 Ill. App. 2d 226.

Defendant correctly states that the use of a special interrogatory is not favored in criminal cases. (See *United States v. Jackson* (7th Cir. 1976), 542 F.2d 403; *United States v. Spock* (1st Cir. 1969), 416 F.2d 165.) In *Spock*, after noting, *inter alia*, that the Federal Rules of Criminal Procedure contain no provision for special interrogatories, the United States Court of Appeals for the First Circuit stated as follows:

> "We are not necessarily opposed to new procedures just because they are new, but they should be adopted with great hesitation. [Citation.] It takes but little imagination to see that the present case should be the last, rather than first, to embark upon a practice of submitting special jury findings in a criminal case along with the general issue for no significant reason. Here, whereas, as we have pointed out, some defendants could be found to have exceeded the bounds of free speech, the issue was peculiarly one to which a community standard or conscience was, in the jury's discretion, to be applied. [Citation.] Whether we agree with defendants' position or not, this was not a case to be subjected to special limitations not sanctioned by general practice. We must hold the court's action to be prejudicial error." 416 F.2d 165, 183.

However, in *Heald v. Mullaney* (1st Cir. 1974), 505 F.2d 1241, the same court adopted a modified view towards special interrogatories, stating as follows:

"[W]e do not believe that a mechanical *per se* rule of unconstitutionality is warranted for all special questions in criminal cases. In *Spock* we were exercising our supervisory powers and, therefore, did not have to reach constitutional ground. [Citation.] To be sure, *Spock* condemned special questions in terms of their effect upon the independence of juries, a ground going to the institutional integrity of juries and having plain constitutional implication. *** We have little doubt that, in general, the use of special questions and verdicts in any criminal proceeding, state or federal, is suspect not only as a matter of sound judicial policy but of due process as well.

We know, however, that special questions have been permitted for some very limited purposes even in federal criminal proceedings. We cannot say that every specialized use that may emerge under state procedures and statutes necessarily violates the due process clause. Some usages may be exempt from the dangers described in *Spock*; for example, certain questions may plainly lack any capacity to catechize, color or coerce the jury's decision making." 505 F.2d 1241, 1245-46.

■ We agree with the State that, rather than harmful to the defendant, the use of the special interrogatories, which required the juries to make a separate determination as to each magazine, actually benefited the defendant, as it lessened the collective impact of the material. (Compare *Heald v. Mullaney* (1st Cir. 1984), 505 F.2d 1241.) Even were we to conclude that the use of special interrogatories in these cases was error, the error would be harmless since the finding by the jury in each case that one magazine was obscene was sufficient to sustain the verdict of guilt.

For all of the foregoing reasons, the judgment of the circuit court of Kendall County is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.