Victoria VAN SANT,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 11A01–8711–CR–281.

Court of Appeals of Indiana,
First District.

May 17, 1988.

Glenn A. Stanko, Reno, O'Byrne & Kepley, P.C., Champaign, William G. Smock, Terre Haute, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Victoria Van Sant appeals from the Clay County Superior Court her conviction for Distribution or Exhibition of Obscene Matter, Indiana Code section 35-49-3-1. We affirm.

## FACTS

On October 31, 1986, an adult bookstore opened in Clay County, northwest of the intersection of Interstate 70 and State Road 59. The bookstore was known as "BookaRama". On November 1, 1986, Clay County Prosecutor Fritz Modesitt met with Clay County Sheriff Wayne Lucas and Deputies Doug Smiley and Michael Lankford. At this meeting the BookaRama bookstore was discussed. Sheriff Lucas instructed Deputies Smiley and Lankford to purchase magazines from the BookaRama bookstore, and gave each Deputy Forty Dollars ($40).

After the meeting concluded Deputy Smiley carried out Sheriff Lucas's instructions. Deputy Smiley went to the BookaRama bookstore and purchased three (3) magazines. All of the magazines purchased were visible from the register counter, and none were covered to prevent viewing of the cover or the contents. The store contained several racks of magazines. Smiley picked three (3) magazines from the racks, took them to the register, and placed them face up on the counter. Victoria Van Sant, who was employed at the BookaRama bookstore as a cashier, picked up the magazines to determine the price, rang up the sale, and placed the magazines in a paper bag. Deputy Smiley paid for the magazines, and left the store.

After Deputy Smiley made his purchases, Deputy Lankford arrived at, and entered the BookaRama bookstore. Deputy Lankford observed that the store contained several racks of magazines and sexual devices. Deputy Lankford picked out two (2) magazines, took them to the counter, and placed them face down on the counter. Van Sant turned over the magazines, found the prices and rang up the sale. The magazines were not covered to prevent viewing of the cover or contents. Deputy Lankford paid for the magazines and left the store.

Van Sant was charged by information with two (2) counts of Offer, Distribution and Exhibition of Obscene Material, under Indiana Code section 35-49-3-1(2).[1] On

1. Ind.Code § 35-49-3-1 provides in full, as follows:

"Importation or distribution of obscene matter.—A person who knowingly or intentionally:

(1) Sends or brings into Indiana obscene matter for sale or distribution; or

(2) Offers to distribute, distributes, or exhibits to another person obscene matter; commits a class A misdemeanor. However, the offense is a class D felony if the obscene matter

May 18, 1987, a jury trial commenced with the selection of jurors. The trial was conducted on May 19 and 20, 1987, and concluded when the jury returned verdicts of guilty on both counts charged against Van Sant. On June 15, the trial court sentenced Van Sant. Van Sant appeals her convictions.

### ISSUES

■ Van Sant raises five (5) issues on appeal:

1. Whether the Indiana Obscenity Statute is unconstitutionally vague or overbroad?

2. Whether the trial court erred by making certain rulings on final instructions?

3. Whether the trial court erred by excluding the defendant's evidence relating to the availability of comparable sexually explicit materials in Clay County?

4. Whether the trial court abused its discretion by refusing to send exhibits and instructions to the jury room?

5. Whether sufficient evidence exists to support Van Sant's convictions? [2]

### DISCUSSION AND DECISION

*Issue One*

■ Van Sant argues that Indiana's Obscenity Statute is overbroad or vague on its face in violation of the First and Fourteenth Amendments to the United States Constitution and Article 1 section 9 of the Indiana Constitution. In reviewing a statute based upon a constitutional challenge this court presumes constitutionality. *Whitewater Valley Canoe Rental, Inc. v. Bd. of Franklin Co. Commr's* (1987), Ind.

App., 507 N.E.2d 1001, 1004, *trans. denied; Wallman v. State* (1981), Ind.App., 419 N.E.2d 1346, 1348. If the statute's wording supports a construction that is constitutional, that construction must be adopted. *Wallman,* 419 N.E.2d at 1348–49. In order to satisfy the due process requirements of the United States and Indiana Constitutions, a penal statute must be sufficiently explicit so as to inform individuals of the consequences of contemplated conduct. *Whitewater Valley Canoe,* 507 N.E.2d at 1004; *Id.* at 1349. Thus, if the challenger establishes that the statute forbids conduct in terms so vague that persons of ordinary intelligence must necessarily guess at the statute's meaning and differ as to its application, then the statute violates due process of law, is void for vagueness, and unconstitutional. *Whitewater Valley Canoe,* 507 N.E.2d at 1004; *Porter v. State* (1982), Ind.App., 440 N.E.2d 690, 692; *Wallman,* 419 N.E.2d at 1349; *Ford v. State* (1979), 182 Ind.App. 224, 228, 394 N.E.2d 250, 253, *trans. denied; Riley v. State* (1979), 180 Ind.App. 540, 542, 389 N.E.2d 367, 369, *trans. denied.* Although a statute may pass a vagueness challenge, it may still be unconstitutional under an overbreadth challenge. 16A Am.Jur.2d Constitutional Law § 460 (1979). An overbreadth challenge asserts that the statute is not drawn in sufficiently narrow terms and foreseeably prohibits legitimate conduct. *Andrews v. State* (1987), Ind.App., 505 N.E.2d 815, 822–23; *Porter,* 440 N.E. 2d at 693.

■ In the present case, Van Sant argues that Indiana's Obscenity Statute is unconstitutional on both vagueness and overbreadth grounds.[3] Van Sant argues

depicts or describes sexual conduct involving any person who is or appears to be under sixteen [16] years of age."

**2.** Van Sant argues in her Reply Brief that the State waived several issues by not arguing against them in the Appellee's Brief and suggests that reversal is required based on these issues. This court disagrees. Although the State may not have addressed every particular argument Van Sant presented, these particular arguments raised by Van Sant failed to establish prima facie error. Therefore, reversal is not warranted on this ground.

**3.** Indiana's obscenity statute is set forth in Indiana Code sections 35–49–1–1 through 35–49–3–4. The portion of the statute that defines obscene matter is found at 35–49–2–1, and provides as follows:.
"Obscene matter or performance.—A matter or performance is obscene for purposes of this article if:
(1) The average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;

first that the statute is overbroad for failing to define the terms "prurient interest". Van Sant suggests the lack of a statutory definition allows the prohibition of materials which appeal only to a normal interest in sex. Although Van Sant correctly notes that an obscenity statute cannot prohibit material which appeals to only a normal interest in sex without violating the Constitution,[4] Indiana's Obscenity Statute does not suffer from such a defect. Indiana's Obscenity Statute tracks the United States Supreme Court's definition for obscenity as set forth in *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, and is not unconstitutionally overbroad.[5] *Polykoff v. Collins* (9th Cir.1987), 816 F.2d 1326, 1334–35. In *Polykoff*, Arizona's Obscenity Statute was challenged based upon the "prurient interest" section. The Court of Appeals for the Ninth Circuit held that the statute was not unconstitutional due to the lack of a definition. *Id.* A similar conclusion was reached by the second district of Illinois Court of Appeals in *People v. Sequoia Books, Inc.* (1987), 160 Ill.App. 3d 750, 112 Ill.Dec. 545, 513 N.E.2d 1154. The court opined,

"Further, the statute is not unconstitutional because of its failure to define 'prurient interest'. The United States Supreme Court in *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 505 n. 13, 105 S.Ct. 2794, 2803 n. 13, 86 L.Ed.2d 394, 407 n. 13, pointed out in footnote 13 that many State statutes leave the word 'prurient' undefined and that an obscenity statute which left the term undefined or defined only by case law has been

sustained. Thus, the failure here to define 'prurient interests' is not a satisfactory ground for striking down the statute. See *People v. Sequoia Books, Inc.* (1987), 160 Ill.App.3d 315, 112 Ill.Dec. 54, 513 N.E.2d 468."

*Sequoia Books, Inc.*, 160 Ill.App.3d at 756–757, 513 N.E.2d at 1159. Likewise, Indiana's Obscenity Statute is not unconstitutional on its face. Furthermore, the trial court in the present case clearly limited "prurient interest" to an abnormal interest in sex by giving Final Instruction No. 14, which provided as follows:

"A prurient interest in sex is an unhealthy, unwholesome, morbid, degrading, and shameful interest in sex. An interest in sex is normal but if the material appeals to an abnormal interest in sex it can appeal to the prurient interest."

Record, at 137. Therefore, the statute also was not applied unconstitutionally and this section of Indiana's Obscenity Statute withstands Van Sant's challenge.

■ Van Sant argues also that Indiana's Obscenity Statute is unconstitutional because the statutory definition of contemporary community standards is not expressly limited to the adult community. Van Sant relies on *Pinkus v. United States* (1978), 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed. 2d 293, to support her argument. Van Sant's reliance is misplaced and her argument fails. In *Pinkus* the Supreme Court addressed the propriety of a jury instruction which delineated the community used

---

(2) The matter or performance depicts or describes, in a patently offensive way, sexual conduct; and
(3) The matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value."

**4.** *See, Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (Supreme Court held definition of prurient interest that included a normal interest in sex would be unconstitutional, but rejected Appellate Court's invalidation of entire statute, and held Appellate Court should have pursued partial invalidation of offending section of the statute).

**5.** In *Miller* the United States Supreme Court defined obscenity as follows:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra*, 408 U.S., [229] at 230, 92 S.Ct., [2245] at 2246 [33 L.Ed.2d 312], quoting *Roth v. United States, supra*, 354 U.S., [476] at 489, 77 S.Ct., [1304] at 1311 [1 L.Ed.2d 1498]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

to set the standards of obscenity. The Supreme Court held the instruction was improper because it expressly included children within the delineated group. *Pinkus*, 436 U.S. at 297, 98 S.Ct. at 1812, 56 L.Ed.2d at 298. The Supreme Court, however, did not hold that an instruction on the community standards must specifically exclude children. Furthermore, in *United States v. Sanders* (5th Cir.1979), 592 F.2d 788 *reversed on other grounds* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 910 and *United States v. Grassi* (5th Cir.1979), 602 F.2d 1192 *reversed on other grounds* 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1131, the Court of Appeals for the Fifth Circuit held that an express exclusion of children from the relevant community was not required. *Sanders*, at 796; *Grassi*, at 1198. Similarly, the constitution does not require that Indiana's Obscenity Statute expressly exclude children from the contemporary community standards test.

■■■ Van Sant's third challenge to Indiana's Obscenity Statute argues the "patently offensive" component of the offense is not referenced by the contemporary community standards test, and accordingly, is overbroad. Van Sant's argument fails. Although Indiana's Obscenity Statute appears to measure only the "prurient interest" portion of the offense by the contemporary community standards test, our statute tracks the guidelines set out in *Miller*. Therefore, Indiana's Obscenity Statute is not overbroad facially. *Albright v. State* (1986), Ind.App., 501 N.E.2d 488, 498. Furthermore, in the present case, the trial court did not interpret the statute overbroadly. The trial court gave final Instruction No. 11, which provided as follows:

"Matter is obscene if:

(1) the average person, applying contemporary community standards for Clay County, Indiana, would find that the dominant theme of the matter, taken as a whole, appeals to the prurient interest in sex; and

(2) the average person, *applying contemporary community standards for Clay County, Indiana,* would find that

the matter depicts or describes, in a patently offensive way, sexual conduct; and

(3) the matter, taken as a whole, lacks serious literary, artistic, policitical [*sic*], or scientific value.

You must find that all three elements exist in the matter for it to be obscene.

In determining whether matter is obscene, you must not judge it by your own personal opinions or personal standards."

Record, at 134 (emphasis added). Thus, the trial court instructed the jury to refer to the "contemporary community standards" test to determine whether the material was patently offensive. Therefore, Van Sant fails to convince this court that Indiana's Obscenity Statute is constitutionally defective on this ground.

■■■ Van Sant's next ground for challenging Indiana's Obscenity Statute focuses on the definitions of "sexual conduct" and "deviate sexual conduct" as provided for in Indiana Code sections 35–49–1–9 and 35–41–1–9. Van Sant argues these definitions are overbroad because they prohibit conduct which falls outside the range of materials that can be regulated as obscene. Specifically, Van Sant argues that under subsection (2) of the definition for "sexual conduct", "persons kissing one another in a naked state where there was not a lewd exhibition of the genitals" would be included as obscene material, and that under subsection (3) "a work would be obscene if a person under the age of 16 were portrayed nude without any sexual activity or without a lewd exhibition of the genitals." Appellant's Brief, at 19. Finally, Van Sant suggests that subsection (2) of the definition for "depraved sexual conduct" "would include within its proscription such things as a portrayal of the insertion of a rectal thermometer." Appellant's Brief at 20. Van Sant suggests that the foregoing definitions potentially could result in a prosecution for the sale of a standard medical textbook. Van Sant's arguments again fail.

The problem with Van Sant's attack on these two definitional sections of Indiana's Obscenity Statute is rooted in her attempt to blind this court by separating these sections from the remainder of the statute.

An examination of the whole of Indiana's Obscenity Statute reveals that the overbreadth Van Sant hypothesizes is non-existent. The Indiana Obscenity Statute clearly limits the scope of materials that can be found to be obscene and prohibits convictions unless all the standards set forth in *Miller* are met. Therefore, this court finds no constitutional infirmity in these sections of Indiana's Obscenity Statute.

■■■■ Van Sant's fifth attack on the constitutionality of Indiana's Obscenity Statute focuses on subsection (3) of Indiana Code section 35-49-2-1, which sets out the third prong of the *Miller* obscenity test, as follows: "the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value." Van Sant argues that this section requires the jury to find the material in question contains all of these to avoid a determination of obscenity and suggests that the conjunction "and" should have been used. Van Sant's interpretation of this section is incorrect and her argument fails. A person of ordinary intelligence would interpret this subsection to mean that a jury cannot find the material obscene unless none of the values exist. Thus, if the material contains any one of the values it cannot be found obscene. No constitutional defect exists in this portion of the statute.

■■■ Van Sant's sixth challenge to the Indiana Obscenity Statute suggests that a person could be convicted without proof on a scienter element. Van Sant is mistaken. Although the statute does not expressly state the scienter element for the offense, our courts have read a scienter element into the statute. *Richards v. State* (1984), Ind.App., 461 N.E.2d 744, 746, *trans. denied; Peters v. State* (1983), Ind.App., 449 N.E.2d 311, 313; *Porter*, 440 N.E.2d at 695. Furthermore, in the present case, the trial court gave the following instructions to the jury:

### "COURT'S FINAL INSTRUCTION NO. 7

### DEFENDANT'S FINAL INSTRUCTION NO. 2

"A person commits the offense of offering to distribute, distributing, and ex-hibiting obscene matter who knowingly or intentionally offers to distribute, distributes, and exhibits to another person obscene matter *with knowledge of the nature thereof or contents thereof.*"

### COURT'S FINAL INSTRUCTION NO. 8

### DEFENDANT'S FINAL INSTRUCTION NO. 3

"To sustain the charge of offering to distribute, distributing, and exhibiting obscene matter with respect to any magazine, the State must prove the following propositions:

(1) That the magazine is obscene; and

(2) That the defendant offered to distribute, distributed, and exhibited said magazine to another person; and

(3) *That the defendant then knew the nature of or content of said magazine.*"

### COURT'S FINAL INSTRUCTION NO. 10

### STATE'S INSTRUCTION NO. 5

"The State does not need to prove to you that defendant knew, or believed, that the materials were obscene. If the defendant knew the nature or contents of the materials, that is, knew they were sexually explicit and contained descriptions or depictions of sexual conduct, the requirement of knowledge would be satisfied."

Record, at 130-33 (emphasis added). Thus, scienter is an element under Indiana's Obscenity Statute, and was required in the present case to obtain a conviction. This court finds no constitutional defect with Indiana's Obscenity Statute.

■■■ Van Sant last argues that this court should change the test for obscenity and create a consenting adult standard. This court denies Van Sant's request for judicial legislating.

*Issue Two*

■■■ Van Sant argues next that the trial court erred by giving several jury instruc-

tions. The first jury instruction Van Sant challenges is Final Instruction No. 11. (*See supra* Issue One for full context.) Van Sant argues this instruction was improper because children were not specifically excluded from the relevant community used to establish contemporary community standards, and relies on *Pinkus.* As stated in Issue 1, *Pinkus* did not hold that an instruction had to exclude children from the relevant group defined for the terms "contemporary community standards"; rather, *Pinkus* held it was improper to include children expressly within the definition of the relevant community. *Sanders,* 592 F.2d at 796. A specific exclusion of children was not required. Furthermore, the trial court gave Final Instruction No. 12, which provided as follows:

"Contemporary community standards are determined by what the community of Clay County, Indiana, as a whole in fact finds acceptable. The community as a whole is society at large, and not particular people or particular groups. What some people think the community ought or ought not to accept is not important nor is what you as an individual juror think is good or bad. It is what people in general, the community as a whole, accept that is determinative. You should judge how the average person in this community would view this material."

Record, at 135. This instruction defined properly the relevant community used in the concept of "contemporary community standards".

Van Sant next challenges the trial court's giving of Final Instruction No. 15, which provided, as follows:

"In order to be obscene, the material must depict or describe sexual conduct in a patently offensive way, that is, it must do so in a way that offends the contemporary community standards of Clay County. Not all descriptions or depictions of sexual conduct are patently offensive. You must find that the description or depiction of sexual conduct goes beyond customary limits of candor for it to be patently offensive, that is, to

affront community standards of Clay County."

Record, at 138. Van Sant argues this instruction invaded the province of the jury by defining the terms "patently offensive". This court disagrees. The instruction did not invade the jury's province of determining whether the materials were patently offensive. The instruction helped illuminate the meaning of the terms "patently offensive", and this court finds no error in the trial court's giving of this instruction to the jury.

Van Sant also challenges the trial court's giving of Final Instruction No. 17, which defined "deviate sexual conduct" as follows:

" 'Deviate sexual conduct' means an act involving:

(1) A sex organ of one person and the mouth or anus of another person; or

(2) The penetration of the sex organ or anus of a person by an object."

Record, at 140. This language tracks the statutory definition found in Ind.Code § 35–41–1–9. Van Sant argues the giving of this instruction made it possible for the jury to convict her for the portrayal of conduct which is neither sexual nor patently offensive. Van Sant refers back to her overbreadth challenge to the same statutory definition. Van Sant's argument suffers from her attempt to separate this instruction from the remainder of the instructions given to the jury, and likewise, fails. This court reviews the instructions as a whole in determining whether a specific instruction was given properly, and correctly informed the jury. *Moore v. State* (1985), Ind., 485 N.E.2d 62, 66. An error in a particular instruction will warrant reversal only if the error is such that the whole of the charge to the jury misleads as to the law of the case. *Thomas v. State* (1987), Ind., 510 N.E.2d 651, 653; *Id.* The present instruction was not improper. Furthermore, our review of the instructions as a whole convinces this court that the jury was not misled, and that an improper conviction could not have been obtained. *Sedelbauer v. State* (1984), Ind.App., 462 N.E.2d 244, 247, *trans. denied.* Other in-

structions properly delineated all of the elements of the offense such that Van Sant could not have been convicted unless the materials met all three of the requirements set out in *Miller*, and our statute.

Van Sant argues next that the trial court erred by giving Final Instruction No. 21 which referred to pandering, as follows:

"In determining whether the allegedly obscene material, taken as a whole, lacks serious literary, artistic, political or scientific value, you may consider whether the material has been pandered.

" 'Pandering' is the business of purveying textual or graphic material openly designed and advertised to appeal to the erotic interest of the intended recipients. Evidence of pandering is relevant with respect to the nature of the material, and if you conclude that the sole emphasis was in the sexually provocative aspect, this can justify the conclusion that the matter is lacking in serious literary, artistic, political or scientific value.

"In determining whether pandering is present, you may consider the circumstances of sale and distribution, advertisement or editorial intent and particularly whether such circumstances indicate that the matter was being commercially exploited by the Defendant for the sake of its prurient appeal."

Record, at 144. Van Sant argues the evidence did not support this instruction and that this instruction was improper under *Pope v. Illinois* (1987), —— U.S. ——, 107 S.Ct. 1918, 95 L.Ed.2d 439. Van Sant's argument is meritless. First, Van Sant did not object at trial to this instruction based upon a lack of evidence to support the giving of the instruction. Accordingly, this portion of her argument is waived. Furthermore, the giving of the instruction was supported by the evidence. The evidence showed that the outside of the BookaRama indicated the store sold adult magazines and the inside of the store contained racks upon racks of sexually explicit magazines and materials. Second, the instruction was not improper under the decision in *Pope*, and was relevant to the determination of obscenity. *Pope* held that the third prong of the *Miller* obscenity test, which seeks to determine if the material lacks serious literary, artistic, political, or scientific value, is measured by a reasonable person standard, and not by the contemporary community standard used in the first two prongs of the *Miller* test. *Pope*, —— U.S. at ——, 107 S.Ct. at 1921, 95 L.Ed.2d at 445. The Supreme Court, stated,

"In *Miller* itself, the Court was careful to point out that '[t]he First Amendment protects works which, taken as a whole, have serious literary, artistic, political, or scientific value, regardless of whether the government or a majority of the people approve of the ideas these works represent.' 413 U.S., at 34, 93 S.Ct., at 2620. Just as the ideas a work represents need not obtain majority approval to merit protection, neither, insofar as the First Amendment is concerned, does the value of the work vary from community to community based on the degree of local acceptance it has won. The proper inquiry is not whether an ordinary member of any given community would find serious literary, artistic, political, or scientific value in allegedly obscene material, but whether a reasonable person would find such value in the material, taken as a whole. The instruction at issue in this case was therefore unconstitutional."

*Id.* Van Sant suggests the pandering instruction violated the holding in *Pope* by connecting the third prong's determination of value with the first prong's determination of the appeal to prurient interests, and that since the jury was instructed to measure the prurient interests prong by the contemporary community standards the jury was misled as to the proper standard for the value determination prong. Van Sant is mistaken. The connection Van Sant makes between the pandering instruction and a conflict with *Pope*, although creative, is tenuous at best, and this court finds no misleading connection. Furthermore, the instruction was proper and relevant to the law of the case as pandering shows motive and intended value which are both relevant to establishing obscenity. *Pinkus*, 436

U.S. at 303, 98 S.Ct. at 1815, 56 L.Ed.2d at 302; *Sedelbauer v. State* (1981), Ind., 428 N.E.2d 206, 207 *cert. denied* 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153. Therefore, the trial court did not err by giving Final Instruction No. 21.

■■■■ Van Sant challenges next the trial court's giving of Final Instruction No. 22, which provided as follows:

"Consent on the part of the person to whom distribution is made is not an element of the defense charged in this case. It is not a legal defense that no minors or unconsenting adults were exposed to the materials."

Record, at 145. Van Sant suggests this instruction was improper and reversal is required because it was phrased negatively, denegrated her defense, and invaded the province of the jury. Van Sant is mistaken. Although the instruction is phrased negatively, contrary to Van Sant's argument, reversal is not required in the present case. Van Sant correctly points out that instructions generally should be positive in form. *Steinbarger v. State* (1948), 226 Ind. 598, 605, 82 N.E.2d 519, 521–22. Van Sant also correctly notes that an instruction should neither invade the province of the jury nor disparage a defendant's defense. *Walker v. State* (1976), 265 Ind. 8, 11, 349 N.E.2d 161, 164 *cert. denied* 429 U.S. 943, 97 S.Ct. 363, 50 L.Ed. 2d 313; *Huddleston v. State* (1973), 260 Ind. 398, 400, 295 N.E.2d 812, 814; *Steinbarger*, 226 Ind. at 603, 82 N.E.2d at 521. However, in the present case, the instruction neither invades the province of the jury, nor denegrates Van Sant's defense. Furthermore, although the instruction is phrased negatively it does not, when read with the other instructions as a whole, mislead as to the law of the case. *Thomas*, 510 N.E.2d at 653; *Moore*, 485 N.E.2d at 66. Furthermore, this court rejects Van Sant's contention that the instruction precluded the jury from determining the contemporary community standards and from determining whether the material was obscene. Therefore, this court finds no reversible error in the giving of Final Instruction No. 22.

■■■■ Van Sant last challenges the giving of Final Instruction No. 23, which instructed on the First Amendment, as follows:

"Obscene material is not protected by the First Amendment to the Constitution, which provides for freedom of speech and expression."

Record, at 146. Van Sant argues this instruction confused or misled the jury. Again, this court disagrees with Van Sant's contention. Final Instruction No. 23 was a correct statement of the law, and when considered with the other instructions as a whole, this court finds that the instruction was neither confusing nor misleading as to the law of the case.

*Issue Three*

■■■■ Van Sant's next argument focuses on the trial court's exclusion of evidence which related to the availability of comparable sexually explicit materials in Clay County. In order to admit evidence of similar materials into evidence Van Sant had to establish a proper foundation. *United States v. Womack* (D.C.Cir.1974), 509 F.2d 368, 378; *Saliba v. State* (1985), Ind.App., 475 N.E.2d 1181, 1190, n. 14, *trans. denied with dissent* 484 N.E.2d 1295. To establish a proper foundation Van Sant had to show that the material (1) was similar to the material in issue, and (2) enjoyed a reasonable degree of community acceptance. *Womack*, at 378; *Saliba*, at 1190. Mere availability of similar materials does not make them admissible to prove community acceptance and non-obscenity. *Hamling v. United States* (1974), 418 U.S. 87, 125–26, 94 S.Ct. 2887, 2912, 41 L.Ed.2d 590, 625–26.

■■■■ The trial court in the present case assumed that Van Sant met the first foundational requirement, but rejected the evidence of sexually explicit home videos because Van Sant failed to prove community acceptance of the proffered materials. Van Sant argued that the public opinion poll which was already admitted into evi-

dence established community acceptance.[6] Although the public opinion poll may have established the public's acceptance of some types of sexually explicit materials in general, the poll did not establish community acceptance of the specific type of sexual materials Van Sant sought to introduce. Furthermore, no evidence was presented to establish the frequency with which the particular videos were rented by the community. Van Sant merely introduced evidence to establish the availability of the materials. Thus, Van Sant's evidence on the degree of community acceptance was lacking, and Van Sant failed to meet the second foundational requirement.

*Issue Four*

Van Sant argues next that the trial court erred by refusing to send the exhibits and jury instructions to the jury room during deliberations. Van Sant concedes that the decision to send exhibits and writings received in evidence (except depositions) to the jury during deliberations is vested in the sound discretion of the trial judge. *Henning v. State* (1985), Ind., 477 N.E.2d 547, 550; *Thomas v. State* (1972), 259 Ind. 537, 541, 289 N.E.2d 508, 510. In exercising this discretion the trial judge should consider "whether the material will aid the jury in a proper consideration of the case, whether the party will be thereby unduly prejudiced, and whether the material may be subjected to improper use by the jury." *Henning*, at 550. As for instructions, the Indiana Supreme Court has indicated that although a trial judge may send instructions to the jury during deliberations without committing reversible error, the Indiana Supreme Court does not condone the practice. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 585; *Henning*, at 551; *Denton v. State* (1983), Ind., 455 N.E.2d 905, 909. Rather, the Indiana Supreme Court has stated the proper procedure is to reread all the instructions when the jury requests reinstruction. *Denton*, at 909.

In the present case, the trial court followed the proper procedure with regard to jury instruction and reread all the instructions to the jury on request. Therefore, the trial court did not err by refusing to send the instruction to the jury during deliberations. Furthermore, the trial court did not err by refusing to send the exhibits to the jury during deliberations. The record fails to indicate how viewing of the exhibits during deliberations would have aided the jury. The jury viewed the exhibits and heard the evidence on the public opinion poll in open court. The jury never requested to see the exhibits during deliberations. Therefore, this court finds that the trial court did not abuse its discretion by refusing to send the exhibits to the jury during deliberations.

*Issue Five*

Van Sant argues last that the evidence is insufficient to support her conviction. Van Sant argues the evidence was insufficient because the State failed to introduce evidence on the contemporary community standards for Clay County, and in general failed to present sufficient evidence to establish obscenity under the three (3) prong *Miller* test as codified by Indiana Code section 35–49–2–1. Van Sant is mistaken. The State is not required to submit expert testimony in an obscenity case. *Saliba*, 475 N.E.2d at 1184–85. The obscenity determination may be based on the jury's viewing of the allegedly offensive material alone. *Id.* at 1184; *Sedelbauer*, 455 N.E.2d at 1164. In the present case, the State introduced the materials into evidence. The materials included the three (3) magazines purchased by Deputy Smiley and the two (2) magazines purchased by Deputy Langford, State's Exhib-

---

6. The public opinion poll Van Sant refers to was conducted by Dr. Roderick A. Bell. Dr. Bell used a "closed end" questionnaire and surveyed residents of Clay County by telephone. The respondents for the poll were picked by computer under a random digital dialing system. Among the questions in the poll, one asked whether it was all right for consenting adults to view movies or magazines that depicted nudity and actual and pretended sexual activities. Another question asked whether it was all right for adult bookstores and theaters to sell or show such materials to consenting adults. The poll was general in nature and did not include questions as to the acceptability of the specific materials in question.

its Nos. 7–11. These magazines contained depictions of various sexual acts and deviate sexual conduct. The cover of State's Exhibit No. 7 was a full color photograph of two males. One male was standing nude and had a white rope wound around his body, and penis. The other male was kneeling in front of the first and was engaging in oral sex on the first male. The pictures inside the magazine depicted oral and anal sex between these two males. The cover of State's Exhibit No. 8 had full color photographs that depicted two nude males engaging in oral sex and one female engaging in oral sex. The pictures inside the magazine depicted these three engaged in various sex acts, including anal and oral sex. The cover of State's Exhibit No. 9 depicted a full color photograph of two males engaging in oral sex. The pictures inside the magazine depicted males performing various oral and anal sex acts on each other. The cover of State's Exhibit No. 10 depicted a closeup full color photograph of a nude male's pubic area and a blond female engaging in oral sex on the male's testes. The cover of State's Exhibit No. 11 depicted four (4) full color photographs of a nude male and female performing anal sex. The pictures inside of State's Exhibits Nos. 10 and 11 both depicted scenes of anal and oral sex between males and females. The jury viewed these materials and so has this court. This evidence was sufficient to support the obscenity determination.

 Van Sant argues also that the evidence was insufficient to support her conviction for the exhibiting, offering to distribute, and distributing of the materials because the evidence failed to establish her knowledge of the nature of the materials. Van Sant is mistaken. The evidence established that when Deputy Lankford entered the BookaRama bookstore Van Sant was the only person in the store. The evidence implies the same as for Deputy Smiley's purchases. Van Sant was the only person in control of the BookaRama bookstore at the time both Deputies made their purchases. Van Sant's suggestion that she was unaware of the nature of the materials is ludicrous. Signs identified the BookaRama as an adult bookstore. Furthermore, inside the BookaRama racks were filled with magazines similar to the materials in issue and sexual devices were also on the racks. The magazines were viewable from the counter, and Van Sant viewed the covers of the magazines before registering the purchase price. The covers were descriptive of the contents. Therefore, this court holds that sufficient evidence existed to establish Van Sant's knowledge of the nature of the materials, and to establish Van Sant's exhibition, offer to distribute, and distribution of the materials.

Affirmed.

SHIELDS, P.J., and NEAL, J., concur.